**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARGARET R. BURNETT,**

                          **Plaintiff,**                    **1:10-cv-681**
                                                            **(GLS/DRH)**

          **v.**

**TRINITY INSTITUTION HOMER PERKINS**
**CENTER, INC.; HARRIS OBERLANDER,**
CEO; **CAROL JUNE WASHINGTON,**
Director; and **ROBERT TRIMBLE,** Supervisor,

                          **Defendants.**
_____
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Margaret R. Burnett
Pro Se
521 Second Street, Apt. 1
Albany, NY 12206

**FOR THE DEFENDANTS:**
Carter, Conboy Law Firm                    MICHAEL J. MURPHY, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

**Gary L. Sharpe**
**District Court Judge**


**MEMORANDUM-DECISION AND ORDER**

**I.  Introduction**

Pro se plaintiff Margaret Burnett commenced this action against

defendants Trinity Institution Homer Perkins Center, Inc., Harris

Oberlander, Carol June Washington, and Robert Trimble under Title VII of

the Civil Rights Act of 1964[1] and the Americans with Disabilities Act

(ADA),[2] alleging discrimination, wrongful termination, and unlawful

retaliation.  (*See* Compl., Dkt. No. 1.)  Burnett additionally asserts a

discrimination claim based on her alleged whistleblower status and a

defamation claim.  (*See id.*)  Pending is defendants' motion to dismiss.[3]

(Dkt. No. 6.)  For the reasons that follow, the motion is granted, Burnett's

complaint is dismissed, and Burnett is granted limited leave to amend her

Title VII and ADA claims against Trinity.

## II.  Standard of Review

The standard of review under FED. R. CIV. P. 12(b)(6) is well

established and will not be repeated here.  For a full discussion of the

---

[1]42 U.S.C. § 2000e, *et seq.*

[2]42 U.S.C. § 12101, *et seq.*

[3]While defendants present their motion as one to dismiss or, in the alternative, for summary judgment, the court treats it as a motion to dismiss and declines to evaluate Burnett's claims under a summary judgment standard, which would be premature at this early, prediscovery stage.  Although Burnett attached several exhibits to her complaint and thereby initiated the introduction of extrinsic evidence, the court is not satisfied that Burnett, as a pro se litigant, has received adequate notice of the nature and consequences of FED. R. CIV. P. 56. *See Hernandez v. Coffey*, 582 F.3d 303, 307-09 (2d Cir. 2009).  First, defendants' motion papers are silent as to the standard of review for and consequences of summary judgment. Second, Burnett's use of the term "summary judgment" in her response papers does not suggest a full comprehension of the its applicability.  (*See* Pl. Resp. Aff. at 2, Dkt. No. 9.)

standard the court refers the parties to its decision in *Ellis v. Cohen &*
*Slamowitz, LLP*, 701 F. Supp. 2d 215, 217-18 (N.D.N.Y. 2010).  In
reviewing claims of discrimination or retaliation, "a court may dismiss a
complaint only if it is clear that no relief could be granted under any set of
facts that could be proved consistent with the allegations."  *Williams v. N.Y.*
*City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (internal quotation marks
and citation omitted).  A "pro se complaint is to be read liberally, and should
not be dismissed without granting leave to amend at least once when a
liberal reading of the complaint gives any indication that a valid claim might
be stated."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)
(internal quotation marks, citation, and italics omitted).  However, a party
may not amend a pleading through statements made or submitted in
motion practice.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d
Cir. 1998); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,
477 (2d Cir. 2006).

### III.  Discussion

### A.   Title VII, the ADA, and Individual Liability

As a preliminary matter, the court notes that "individuals are not
subject to liability under Title VII."  *Wrighten v. Glowski*, 232 F.3d 119, 120

3

(2d Cir. 2000) (per curiam) (citation omitted).  Likewise, there is no right of recovery against individuals under the ADA for claims of wrongful termination and retaliation.  *See Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Accordingly, Burnett's Title VII and ADA claims against defendants Oberlander, Washington, and Trimble are dismissed.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004).

**B.   Title VII Claims**

Burnett asserts three grounds for Trinity's liability under Title VII based on its alleged discriminatory conduct: (1) termination of employment; (2) unequal terms and conditions of employment; and (3) retaliation.  (*See* Compl. at 2, Dkt. No. 1.)  However, neither Burnett's complaint nor the documents submitted in support of her complaint contain any information identifying Burnett as a member of a protected class.  (*See generally* Compl. & Exs. 1-20, Dkt. No. 1.)  Thus, Burnett's complaint fails to allege—explicitly or implicitly—that her membership in a protected class was the basis for Trinity's alleged actions or that Trinity acted with a discriminatory animus.  Furthermore, there is nothing in Burnett's submissions that suggests she engaged in a protected activity regarding a

4

type of discrimination that Title VII forbids.  Accordingly, the court is

obligated to dismiss Burnett's Title VII claims against Trinity.  Importantly

though, the court is equally obligated to afford Burnett an opportunity to

amend her complaint to allege facts sufficient to support a claim under Title

VII against Trinity.

**C.    ADA Claims**

While Burnett's submissions are silent as to her membership in a

class protected by Title VII, her complaint and submissions do allege that

while she was on disability leave she suffered an adverse employment

action.  Specifically, Burnett alleges that after undergoing a hysterectomy

on January 30, 2009, she went on short-term disability leave with a return

date of April 1, 2009, but was notified by letter dated February 11, 2009,

that she was being terminated.  (*See* Compl. at 7-10, Dkt. No. 1; *see also*

Compl. Exs. 2, 9, 13, Dkt. No. 1:1.)  However, notwithstanding her pro se

status and the ADA's broad coverage, Burnett wholly fails to allege an ADA

claim for discrimination or retaliation.

To establish a prima facie case of discrimination under the ADA, a

plaintiff must allege, inter alia, that she "is disabled within the meaning of

the ADA or perceived to be so by [her] employer."  *Brady v. Wal-Mart*

*Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (citation omitted).  The ADA

defines "disability" as "a physical or mental impairment that substantially

limits one or more major life activities ...; a record of such an impairment; or

being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-

(C).  However, a person cannot be "regarded as having ... an impairment" if

her impairment is "transitory" such that it has "an actual or expected

duration of 6 months or less."  *Id.* § 12102(3)(B); *see also Toyota Motor*

*Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) ("The impairment's

impact must also be permanent or long term."), *partially superseded by*

*statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat.

3553; *Jackson v. Nor Loch Manor HCF*, 134 F. App'x 477, 477 (2d Cir.

2005) (holding that a surgical procedure requiring a temproary absence

from work is "not enough to sustain a claim under the ADA"); *Adams v.*

*Citizens Advice Bureau*, 187 F.3d 315, 316 (2d Cir. 1999) (per curiam)

(holding that, absent an ongoing impairment, an employee is not disabled

under the ADA where he was on leave for three months due to an

automobile accident); *Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272,

275 (W.D.N.Y. 2009) (finding no disability where employee suffered a

broken ankle which resulted in a single, twelve-week disability leave with

no alleged subsequent physical impairments); *cf. Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (noting that Equal Employment Opportunity Commission (EEOC) regulations counsel courts to consider the nature, severity, duration or expected duration, and permanent or long-term impact of the impairment).

Here, Burnett does not allege that she was disabled or that Trinity perceived her as being disabled within the meaning of the ADA.  Rather, Burnett simply alleges that she was wrongfully terminated "*while* [she] was out on short-term disability."  (Compl. at 11-12, Dkt. No. 1 (emphasis added).)  Burnett does not even allege that she was terminated *because* she was on disability leave.  Therefore, the court dismisses her claim for wrongful termination under the ADA.

As to Burnett's ADA-based retaliation claim, the court "analyze[s] a retaliation claim under the ADA using the same framework employed in Title VII cases."  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (citation omitted).  Preliminarily, because "a plaintiff need not establish that the conduct [s]he opposed was actually a violation of the [ADA] so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the

7

employer violated that law," *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (internal quotation marks and citation omitted), the court is unwilling to find at this juncture that Burnett's belief that Trinity's actions violated the ADA was unreasonable.  Nonetheless, the court is equally unwilling to categorize the retaliatory conduct that Burnett alleges as an adverse employment action, since that conduct—namely, opposing both her receipt of unemployment benefits and her New York State Division of Human Rights complaint—occurred after her termination and did not bear a relationship to her present or future employment conditions.  *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("The terminated employee ... may have tangible *future* employment objectives ... [such that she] may be able to state a claim for retaliation, even though [she is] no longer employed by the defendant ...." (citations omitted)).  Moreover, Trinity was entitled to exercise its legal rights and engage in legal advocacy, and as a result, such conduct may not serve as a basis for a retaliation claim.  *See United States v. N.Y. City Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996); *see also Belardo v. Con-Way Transp. Servs., Inc.*, No. 02CV5406, 2005 WL 885016, at *8 (E.D.N.Y. Mar. 28, 2005) ("[A]n employer's actions in objecting to the provision of

unemployment benefits to a former employee is not an adverse

employment action cognizable under the employment discrimination laws."

(citations omitted)); *see, e.g.*, *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*,

No. 09 Civ. 12, 2009 WL 3682458, at *9 (S.D.N.Y. Oct. 29, 2009) (granting

motion to dismiss retaliation claim regarding employer's cessation of

unemployment benefits); *Barriera v. Bankers Trust*, No. 98 Civ. 3641, 2003

WL 22387099, at *7 (S.D.N.Y. Oct. 20, 2003) (finding no adverse

employment action where employer opposed plaintiff's unemployment

benefits claim, failed to award severance pay, and informed the EEOC that

the plaintiff resigned); *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245

(N.D.N.Y. 1999) (holding that employer's opposition to plaintiff's

unemployment benefits application does not constitute an adverse

employment action).  Consequently, the court dismisses Burnett's claim for

retaliation in violation of the ADA.

Still, should Burnett have a viable ADA claim for termination or

retaliation, she may amend her complaint to assert it.

**D.    Whistleblower Status**

Upon a liberal reading of Burnett's complaint and accompanying

submissions, her central allegation is that she was terminated because she

reported to Trinity's Human Resources Director that the Food Pantry

Director was "abusing the company gas credit card." (Compl. at 7, Dkt. No.

1.)  Burnett alleges, "[t]he termination was plotted and planned after [she]

turned in the Food Pantry Director in December 2009." (*Id.* at 10.)  After

denying the charge, the Food Pantry Director "admitted to it" and was

"merely suspended from work for one week." (*Id.*)  And thus, according to

Burnett, "Trinity does not practice fair employment practices" since it "will

keep a thief, but fire someone who goes out of [her] way to assist clients."

(*Id.*)  In essence, Burnett's claim is that she was terminated for being a

whistleblower, and, as a whistleblower, was treated unfairly compared to

the Food Pantry Director.

New York State's Whistleblower Statute prohibits an employer from

"tak[ing] any retaliatory personnel action against an employee ... [who]

discloses ... an activity, policy or practice of the employer that is in violation

of law, rule or regulation which violation creates and presents a substantial

and specific danger to the public health or safety."  N.Y. LAB. LAW §

740(2)(a); *see also Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d

465, 475 (E.D.N.Y. 2006).  The Whistleblower Statute, however, "does not

extend its protections to those who complain of *any* unlawful conduct by

the employer." *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 268 (S.D.N.Y. 2001); *see, e.g.*, *Remba v. Fed'n Emp't & Guidance Serv.*, 76 N.Y.2d 801, 802-03 (N.Y. 1990) (holding that § 740 does not protect an employee who reports fraudulent billing).  Here, because the conduct complained of by Burnett, namely misusing the company gas credit card, could in no imaginable way create or present a "substantial and specific danger to the public health or safety," the court dismisses any claim brought pursuant to § 740.

To the extent that Burnett's retaliation claim is grounded in the First Amendment, it must fail for similar reasons.  A First Amendment retaliation claim requires a plaintiff to demonstrate, among other things, that her "speech was constitutionally protected." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).  To engage in constitutionally protected speech, a plaintiff must have spoken as a citizen on a "matter of political, social, or other concern to the community." *Id.* (internal quotation marks and citation omitted).  Putting aside the fact that Trinity is not a public entity and Burnett is therefore not a public employee,[4] which in itself is dispositive, there is no

---

[4]Likewise, since Burnett is not a federal employee and the conduct reported does not implicate federal law or policy, she is not entitled to protection under the federal Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).

question that Burnett's complaint regarding the Food Pantry Director's
misconduct does not constitute constitutionally protected speech.  Nor do
any of her allegations regarding Trinity's pre- and post-termination conduct
evidence a potential form of unconstitutional retaliation.  Consequently, any
remaining retaliation claims based on Burnett's alleged whistleblowing
activity are dismissed.

**E.**     **Defamation Claim**

Lastly, Burnett vaguely alleges that defendant Trimble perjured
himself and defamed her character during her unemployment benefits
hearings before the New York State Department of Labor when Trimble
stated that "he 'shouldn't have to tell [Burnett] not to have sex with [Trinity's
clients].'"  (Compl. at 12, Dkt. No. 1; *see also id.* at 10-11 ("Trimble ...
defamed my character [by] making reference to my having 'sex with
clients.'").)  Burnett further alleges that Trinity and its attorneys were
dishonest and untrue in filing a verified answer with and in responding to
requests made by the Albany County Department of Social Services
(ACDSS) and the NYSDHR.  (*See id.* at 8-9.)  Additionally, according to
Burnett, defendant Washington "was repeatedly evasive in her answers
and continually controdicted [sic] herself in all three hearings."  (*Id.* at 10.)

12

In general, "New York law is clear that when a defendant-employer writes to the Department of Labor concerning a former employee's right to unemployment benefits, that writing is privileged and cannot be the basis for a libel action by the claimant-employee." *Pappas v. Air Fr.*, 652 F. Supp. 198, 202 (E.D.N.Y. 1986) (internal quotation marks and citations omitted); *see also Allan & Allan Arts Ltd. v. Rosenblum*, 201 A.D.2d 136, 139-40 (2d Dep't 1994) ("[D]uring the past several decades, the courts have extended the absolute privilege to a wide array of hearings held by administrative agencies, finding such hearings to be 'in substance judicial.'" (citation omitted)) (collecting cases).  Likewise, "statements made over the course of a quasi-judicial proceeding" are privileged under New York law. *Pappas*, 652 F. Supp. at 202; *see, e.g.*, *Stilsing Elec., Inc. v. Joyce*, 113 A.D.2d 353, 356-57 (3d Dep't 1985) (finding Department of Labor proceedings quasi-judicial in nature and that written and oral statements made to the agency are absolutely privileged); *Silver v. Mohasco Corp.*, 94 A.D.2d 820, 822 (3d Dep't 1983) (finding NYSDHR proceedings quasi-judicial in nature and that any statements made during such proceedings are privileged and cannot form the basis of a libel or slander action).  Thus, "statements [made] to the Department of Labor, whether oral or written, are

13

absolutely privileged under New York law." *Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121, 133-34 (E.D.N.Y. 2004) (noting that "when an employer writes to the Department of Labor concerning a former employee's right to unemployment benefits, that writing is subject to an absolute privilege and cannot serve as the basis for a libel action brought by the claimant employee") (internal quotation marks and citations omitted)).

Having liberally interpreted Burnett's complaint and drawn all reasonable inferences from the materials submitted in conjunction therewith in her favor,[5] the court finds as a matter of law that the predicate oral and written statements made by Trinity, Trimble, and Washington are entitled to absolute immunity as they were all made in the course of proceedings held by ACDSS, Department of Labor, and NYSDHR. Accordingly, as all of these proceedings were adversarial, susceptible to review, and thereby quasi-judicial in nature, Burnett's defamation causes of action are dismissed.

---

[5]The court does note that Trinity's submissions, which have been disregarded for present purposes, include a more complete version of the hearing transcripts that Burnett initially submitted with her complaint and upon which aspects of her defamation claims rely. (*Compare* Compl. Ex. 20, Dkt. No. 1:2, *with* Murphy Aff., Defs. Ex. E, Dkt. No. 6:6.)  The more complete version of the hearing transcripts raises serious questions about the accuracy of Burnett's allegations and the meritoriousness of her defamation claims.

## IV.  **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 6) is

**GRANTED** and Burnett's complaint is **DISMISSED**; and it is further

**ORDERED** that Burnett is granted leave to file an amended

complaint, in full compliance with the terms of this Order, **within thirty (30)**

**days** from the date of the filing of this Order, after which Trinity shall

respond to the complaint as permitted under the Federal Rules of Civil

Procedure; and it is further

**ORDERED** that if Burnett fails to file an amended complaint **within**

**thirty (30) days** from the date of the filing of this Order, the Clerk of the

Court shall enter judgment dismissing this action without further order of

the court; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties by regular and certified mail.

**IT IS SO ORDERED.**

January 25, 2011
Albany, New York

United States District Court Judge

15